UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| KATHY YOUNT, ESTATE OF DYLAN YOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; SAN FRANCISCO FIRE DEPARTMENT; and DOES 1 to 5, inclusive,<br><br>Defendants._____/ | No. C 11-1141 MEJ<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 26)** |

**INTRODUCTION**

This case arises from the suicide of Dylan Yount ("Dylan") on February 16, 2010, in Hallidie Plaza in San Francisco. On March 9, 2011, Plaintiffs Kathy Yount individually, and as representative of the Estate of Dylan Yount (collectively, "Plaintiffs") filed suit against the City and County of San Francisco ("the City"), the San Francisco Police Department, and the San Francisco Fire Department (collectively, "Defendants") under 42 U.S.C. § 1983 and California state law for failure to prevent this tragic event. Pending before the Court is the City's Motion for Summary Judgment, filed April 15, 2013. Dkt. No. 26. The Court found this motion suitable for disposition without oral argument and vacated the May 30, 2013 hearing pursuant to Civ.L.R. 7-1(b). Dkt. No. 53. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS Defendant's motion for summary judgment. In so doing, the Court declines to

exercise supplemental jurisdiction over the state law claims, and therefore dismisses those claims without prejudice. 28 USC § 1367(c)(3).

**BACKGROUND**

The following facts are taken from the parties' Joint Statement of Undisputed Facts ("JSUF"), filed on June 4, 2013.[1] Dkt. No. 51. On February 16, 2010, at approximately 3:07 p.m., the San Francisco Police Department ("SFPD") received a 911 call from a woman who said she saw a man standing on a ledge of the "Forever 21" building located at Powell and Market Streets in San Francisco. JSUF No. 1. This was the first 911 call the SFPD received about this incident. *Id.*, No. 2. Dispatchers first broadcast the call over the police radio at approximately 3:10 p.m. *Id.*, No. 3.

San Francisco Police Officer Cezar Perez arrived on the scene at approximately 3:15 p.m. and called up to the man, later identified as Dylan Yount, to go back inside. *Id.*, No. 4. At one point, Officer Perez called out, "Get back in your apartment, you fool." *Id.* Officer Perez then took the following steps: (1) called for a Code 33, to clear all radio traffic on that channel except communications about this incident; (2) called for a hostage negotiator; and (3) called for more officers to clear the area below Dylan in order to protect the public. *Id.*, No. 5.

Over the next ten minutes, Officer Perez continued to yell at Dylan to go back inside. *Id.*, No. 7. Officer Perez noticed a few people in the crowd who were laughing and saying or yelling inappropriate things. *Id.*, No. 8. Officer Perez repeatedly told the people who were laughing or uttering inappropriate things to "shut up." *Id.*, No. 9. The officer did not identify any of the persons who were laughing or uttering inappropriate things. *Id.*, No. 10. During this time, Officer Perez also heard some people in the crowd who were urging Dylan to go back inside. *Id.*, No. 11.

San Francisco Police Officer Craig Canton, a trained hostage negotiator, was on duty in the City when heard the call requesting a hostage negotiator. *Id.*, No. 15. "Hostage negotiator" is the

---

[1] Plaintiffs ask that the Court deny the City's Motion for failure to comply with Civil Local Rule 56-2, and the Court's Case Management Order of April 23, 2013, in failing to file a joint statement of undisputed facts at the time it filed the present Motion. The Court DENIES Plaintiffs' request as the record shows an absence of prejudice to Plaintiffs (Dkt. No. 42, 12: 24-27) and no willful delay by Defendants (Dkt. No. 44, 19, 20-26).

term the SFPD uses to describe officers trained to deal with suicide threats as well as hostage situations or barricaded subjects. *Id.*, No. 6. Officer Canton notified the dispatcher that he would respond and immediately drove to the scene. *Id.*, No. 16. Officer Canton arrived at approximately 3:21 p.m. *Id.*, No. 17. Officer Canton observed Dylan on the ledge and decided, given the level of noise from the crowd, that it would be better to enter the building and attempt to speak to Dylan from inside rather than trying to yell up at him from the ground, in part because speaking to him from the apartment might lure him inside. *Id.*, No. 18. Officer Canton was slightly delayed because security measures prevented him from quickly entering the building and using the elevator, and there was no receptionist or security guard in the entrance who could help, but he was soon able to arrive at the floor where he believed Dylan's apartment was located. *Id.*, No. 19. Before Officer Canton could reach the door, however, Dylan jumped off the building. *Id.*, No. 20.

Dylan jumped at approximately 3:25 p.m. *Id.*, No. 21. Approximately 18 minutes elapsed between the first 911 call and Dylan's jump. *Id.*, No. 22. Approximately 15 minutes elapsed between the arrival of the first SFPD officer and Dylan's jump. *Id.*, No. 23. Medical workers approached Dylan within seconds and ascertained he was dead. *Id.*, No. 24. Dylan's body was covered within five minutes after he landed on the ground. *Id.*, No. 25.

A civilian videographer named Roberto Lopez happened upon the scene while taking his lunch break. *Id.*, No. 12. Mr. Lopez took several video clips and still images of Dylan on the ledge and the crowd's reaction. *Id.*, No. 13. Mr. Lopez did not identify any of the persons who were laughing or uttering inappropriate things. *Id.*, No. 14. The earliest image showing Dylan on the ledge contains a beginning time stamp of approximately 4:13 p.m. and the video of Dylan jumping off the building contains a beginning time stamp of approximately 4:21 p.m. *Id.*, No. 26. The video does not capture the entire event. *Id.*

Plaintiffs also offer two disputed facts, to which the City objects. *Id.* at 5-6. During his deposition, Officer Perez admitted that he did not know that inciting someone to commit suicide was a felony under California Penal Code section 401. *Id.*, Proposed JSUF No. 27. The video does not depict Officer Perez yelling at the crowd to "shut up," nor does it depict Officer Perez, or any other

3

officer, engaging or interacting with the crowd in any way. *Id.*, Proposed UMF No. 28.

On March 9, 2011, Plaintiffs filed the present Complaint, asserting eight causes of action: (1) a 42 U.S.C. § 1983 claim of deliberate indifference to Dylan's medical needs; (2) a § 1983 wrongful death claim for failing to provide medical and psychological care, and by "actively encouraging" Dylan to jump, resulting in violation of Dylan's substantive due process rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution; (3) a § 1983 claim for deprivation of the right to a family relationship; (4) a claim under *Monell v. Dep't. of Social Svcs.*, 436 U.S. 658 (1978), for municipal liability; and (5) a survival action under § 1983. Compl., at 24-29, 31-34, 36-39, Dkt. No. 1. The sixth, seventh and eighth causes of action asserted three state law claims: wrongful death; violation of California Civil Code section 52.1 (the "Bane Act"); and intentional infliction of emotional distress. *Id.* at 40-49.

On April 15, 2013, the City moved for summary judgment on all claims. Dkt. No. 26. Thereafter, Plaintiffs expressly abandoned the first cause of action based on deliberate indifference to Dylan's medical needs; the fourth cause of action for *Monell* liability to the extent it concerns deliberate indifference to Dylan's medical needs; and the seventh cause of action under the Bane Act. Pl.'s Opp'n at 17 n.2 and 25 n.3, Dkt. No. 42. Plaintiffs also failed to contest the City's Motion regarding the allegations of procedural due process, excessive force and invasion of privacy in the second cause of action; the disruption of familial relations allegations in violation of due process in the third cause of action; and the survivor's claim for damages for Dylan's pain and suffering in the fifth cause of action. Mot. at 18-21.

**LEGAL STANDARD**

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

4

A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *Id.* at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## A. Liability under 42 U.S.C. § 1983

A 42 U.S.C. § 1983 claim based on a state's omission or failure to protect requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law, and (2) the conduct must deprive the plaintiff of a constitutional right. *Ketchum v. Alameda Cnty.,* 811 F.2d 1243, 1245 (9th Cir. 1987). "[T]he general rule is that [a] state is not liable for its omissions." *Munger v. City of Glasgow Police Dep't.*, 227 F.3d 1082, 1086 (9th Cir. 2000). The Fourteenth Amendment's Due Process Clause generally does not require government actors to protect individuals from third parties, even where such aid may be necessary to secure life, liberty, or property interests. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). There are two exceptions to this rule: (1) when a "special relationship" exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" (the state-created danger exception). *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (internal citations omitted).

### 1. Special Relationship Exception

The prevailing rule is that "citizens have no constitutional right to be protected by the state

from attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public." *Ketchum,* 811 F.2d at 1247. In defining this "special relationship," courts have considered "whether there is a custodial relationship created or assumed by the state, whether the state is aware of a specific risk of harm to the plaintiff, or whether the state has affirmatively placed the plaintiff in a position of danger." *Id.* (internal citations omitted).

The state's constitutional duty arises "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom." *DeShaney,* 489 U.S. at 200 (1989). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf" which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. *Id*. at 195, 200. In other words, the person's substantive due process rights are triggered under this exception when the state restrains his liberty, not when he suffers harm caused by the actions of third parties. *Id*.

Here, no special relationship arose between the state and Dylan by virtue of the officers' knowledge of Dylan's risk of suicide and their attempts to render aid. A special relationship giving rise to the duty to protect is not formed "simply because police responded to a call for assistance and took some action at the scene." *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 279 (1998). Nor is it enough to assert that law enforcement "took control of the situation." *Minch v. Cal. Highway Patrol*, 140 Cal. App. 4th 895, 905 (2006). Instead, special relationships outside the custody relationship have been found only in "a limited class of unique cases" involving "police officers who made misrepresentations that induced a citizen's detrimental reliance [citations], placed a citizen in harm's way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions [citation]." *Id*. at 279-80.

Plaintiffs incorrectly cite *Escamilla v. Santa Ana,* 796 F.2d 266, 269-70 (9th Cir. 1986), *Ketchum,* 811 F.2d at 1245, and *Jensen v. Conrad* 747 F.2d 185, 194 (4th Cir. 1984), to support their position that a special relationship giving rise to a duty to protect is formed when "law enforcement is

6

aware of a particular risk to someone, or commits itself to that someone's protection." Opp'n at 16: 27-28. But these factors alone, absent affirmative state action which restrains an individual's freedom to act on his own behalf, do not create a special relationship. *DeShaney,* 489 U.S. at 195, 200. Dylan was not in custody, and the police did not induce Dylan's reliance on their actions. Thus, the special relationship exception does not apply here.

### 2. State-Created Danger Exception

The state-created danger exception "applies only where there is affirmative conduct on the part of the state in placing the plaintiff in danger" and "only where the state acts with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (internal quotation marks omitted). For this exception to apply, a government actor must "affirmatively create [ ] an actual, particularized danger [that the plaintiff] would not otherwise have faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006). The danger creation exception thus requires some affirmative act by the state before a duty to protect will arise. In *Wood v. Ostrander*, 879 F.2d 583, 588-90 (9th Cir. 1989), the Ninth Circuit held that a woman who was raped by a third party could proceed under 42 U.S.C. § 1983 under the danger creation exception where the officer had stopped the car in which the plaintiff was riding, arrested and removed the driver, impounded the car, and left the plaintiff stranded in a high crime area late at night. The plaintiff was subsequently raped while trying to get home. *Id*. Even though the plaintiff had not been in state custody, the court held she had stated a cognizable claim under the danger creation exception "because the jury could have found that *the defendant officer had affirmatively created the particular danger that exposed her to third party violence*." *Id.* (emphasis added).

Similarly, in *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1086 (9th Cir. 2000), the court found that officers deprived the victim of his substantive due process rights under the state-created danger exception where they affirmatively ejected the victim from a bar late at night when temperatures were below freezing. The officers knew that the victim was wearing only a t-shirt and jeans, and was intoxicated. *Id.* The officers then *prevented the victim from driving his truck or reentering the bar*, and watched him walk away from the nearby open establishments. *Id.* at 1087

7

(emphasis added). The victim died of hypothermia. *Id*.

In *L.W. v. Grubbs*, the court imposed liability because the defendants, who assigned the victim to work alone with an inmate known to be a sexual predator, "used their authority as state correctional officers *to create an opportunity for [the inmate] to assault L.W. that would not otherwise have existed*." 975 F.2d 119, 121 (9th Cir. 1992) (emphasis added).

Here, Plaintiffs fail to state a cognizable claim because there is no evidence that the City placed Dylan in danger, or that it enhanced his vulnerability to the danger he already faced by failing to control the actions of third parties. Unlike the plaintiffs in *Munger*, *Wood*, and *L.W.*, Plaintiffs have failed to plead facts showing some affirmative act on the part of the state that either created a danger to Dylan or rendered him more vulnerable to an existing danger. Dylan was already facing the danger that he would inflict harm on himself when officers arrived. The responding officers found Dylan already on the ledge, surrounded by a large crowd below. The officers did not place Dylan on the ledge, expose him to the crowd, or force him to remain there. Nor were they in control of Dylan, who did not respond to Officer Perez's repeated instructions to return to his apartment. The undisputed facts show only that the City responded to the danger Dylan himself created and took affirmative steps to mitigate that danger. JSUF Nos. 4-10, 15-19. Thus, the state-created danger exception also does not apply here. Accordingly, there was no violation of Dylan's constitutional rights and the City's Motion should be granted.

**B.     Deliberate Indifference**

Even if the Plaintiffs could establish that the City had a duty to protect Dylan, they would not prevail because they cannot show that the City acted with deliberate indifference in the face of a known risk of harm, i.e., that the City knew that the crowd's shouts would cause Dylan to jump, but deliberately failed to take action, knowing the harm that would result.

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). In other words, the state actor must "recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff."

*L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996) (internal quotation omitted). Mere negligence - or even gross negligence - is not enough for deliberate indifference.[2] *Grubbs*, at 898-900.

Here, to establish a claim of deliberate indifference based on failure to control the crowd, Plaintiffs would need to establish that the officers knew there to be a direct causal connection between the crowd's yells and Dylan's risk of suicide, but nevertheless failed to do anything. However, there is insufficient evidence that the City, through the conduct of the officers at the scene, deliberately exposed Dylan to a known risk without regard for the consequences he might face. The undisputed facts are that the officers at the scene took immediate, reasonable action in response to Dylan's actions. The City dispatched officers to Dylan's location within minutes of receiving 911 calls. JSUF No. 3. Officer Perez, one of the first responding officers, called for a hostage negotiator specially trained in suicide threats, established a clear radio channel, and called for more officers to clear the area below Dylan in order to protect the public. *Id.*, Nos. 5-6. While waiting for the hostage negotiator to arrive, Officer Perez attempted to get Dylan to step back inside. *Id.*, No. 7. Dylan did not respond to Officer Perez, and gave no indication that could hear him.[3]

The undisputed facts also establish that Officer Perez noticed only "a few" people in the crowd saying or yelling inappropriate things, and that he repeatedly told those people to "shut up." *Id.*, Nos. 8, 9. There is no evidence that Officer Perez, or any other City actor, knew that Dylan could hear these statements over the general noise of the crowd: Dylan did not acknowledge or respond to Officer Perez's commands, and the hostage negotiator cited the din from the crowd as one of the reasons he attempted to reach Dylan's apartment rather than yell from below. *Id.*, No. 18. Lastly, there is no evidence, beyond speculation, that the crowd's conduct was the cause of Dylan's decision

---

[2] The Court notes that Plaintiffs' statement of the deliberate indifferent standard incorrectly sets forth a negligence basis for liability by arguing that, "an officer who creates a dangerous situation for the plaintiff does so with deliberate indifference as long as he is aware of the danger he is creating." Opp'n at 19: 2-5.

[3] At one point, Officer Perez called out, "Get back in your apartment, you fool." *Id.*, No. 4. However, this is not, as Plaintiffs assert, an inciting statement. Nor would it meet the standard for deliberate indifference under any test.

to jump, or that the officers knew this but deliberately chose not to act. *Id.*, Nos. 4-11. A party cannot create a "genuine" issue of "material" fact simply by making assertions in its legal memoranda. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1980). Accordingly, Plaintiffs cannot establish deliberate indifference, and the City's Motion should therefore be granted.

## C. Excessive Force and Invasion of Privacy

Plaintiffs allege that Defendants violated the right to be free from the use of excessive force by police officers as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. As to the excessive force cause of action, Plaintiffs' claim must fail because there is no evidence that any City employee ever touched or threatened Dylan, or was in control of anyone who touched or threatened him. *See Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."). Accordingly, the City's Motion must be granted as to Plaintiffs' excessive force claim.

Plaintiffs have also not presented evidence to support any cognizable claim of interference with the zone of privacy. "The relevant Supreme Court precedents delineate at least two distinct kinds of constitutionally-protected privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *In re Crawford*, 194 F3d 954, 958 (9th Cir. 2000). Neither zone is implicated in Plaintiffs' wrongful death action. Accordingly, the Court must grant summary judgment as to this claim.

## D. Disruption of Familial Relations

Plaintiffs also allege a violation of the right to familial relationship under the First, Fourth, and Fourteenth Amendments to the United States Constitution. The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). "Official conduct that 'shocks the conscience' in depriving parents of that interest is

10

cognizable as a violation of due process." *Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

To prevail on a 42 U.S.C. § 1983 due process claim, a plaintiff must first prove a violation of the underlying constitutional right. *Daniels v. Williams*, 474 U.S. 327, 330 (1986). Plaintiffs' Fourteenth Amendment claim is predicated on the same violation of substantive due process rights under the Fourteenth Amendment that Plaintiffs allege in their second cause of action, i.e., that Dylan's rights were violated by the City's failure to protect him. Compl. at 7:1-4, 14-19. Thus, in light of the Court's finding that the City did not violate Dylan's substantive due process rights, there can be no Fourteenth Amendment violation of right to familial relationship. *J.P. ex rel. Balderas v. City of Porterville*, 801 F. Supp. 2d 965, 988 (E.D. Cal. 2011) ("Where a claim for interference with familial relationships is integrally predicated upon, or entwined with, other conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional generally will preclude recovery for interference with familial relationship); *see also Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004); *Schaefer v. Goch*, 153 F.3d 793, 799 (7th Cir. 1998). Summary judgment is therefore appropriate as to Plaintiffs' Fourteenth Amendment claim.

Plaintiffs appear to have abandoned their claims under the First and Fourth Amendments by failing to contest the City's Motion as to these claims. However, to the extent Plaintiffs do assert claims under the First and Fourth Amendments, they are untenable, as Plaintiffs have not identified any associational interests related to speech and petition, or made a showing of excessive force. The Court therefore GRANTS summary judgment as to these claims.

**E.    *Monell* Claim**

A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 694. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force

11

behind the constitutional violation. *Plumeau v. School Dist. #40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Here, Plaintiffs have failed to present any evidence showing that the City had any such policy. Nor can there be a *Monell* claim if the plaintiff fails to establish a constitutional violation by an individual defendant because a city or county cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, a plaintiff in a § 1983 case must provide evidence of a policy that resulted in the deprivation of the plaintiff's civil rights, and must show that an individual officer, acting pursuant to that policy, inflicted constitutional harm on the plaintiff. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). If a person has suffered no constitutional injury at the hands of the police, the fact that the police department and city might have maintained a policy or custom authorizing constitutional violations "is quite beside the point." *Heller*, 475 U.S. at 799. Therefore, summary judgment is appropriate because, as discussed above, Plaintiffs cannot establish any constitutional violation of Dylan's, or their own rights, by any City employee.

**F.     Survival Action**

Finally, Plaintiffs assert a survival cause of action based on violation of Dylan's civil rights under 42 U.S.C. § 1983. Summary judgment is appropriate as to this cause of action because Plaintiffs can not, as a matter of law, establish that the City violated Dylan's constitutional rights by failing to protect him. Even assuming that a basis for liability existed, Plaintiffs cannot recover for pre-death pain and suffering, because they cannot show by a preponderance of the evidence that Dylan "was conscious for at least some period of time after he suffered the injuries which resulted in his death." *F/V Carolyn Jean, Inc. v. Schmitt,* 73 F.3d 884, 885 (9th Cir. 1995) (quoting *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 749-50 (9th Cir. 1980). Merely alleging pain and suffering is insufficient where, as here, the record supports a finding of almost instantaneous death. *Id*.; JSUF 24, Perez Decl. ¶ 14. Accordingly, the Court GRANTS summary judgment as to this cause of action.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to the First, Second, Third, Fourth, and Fifth Causes of Action. Having granted summary judgment on all of Plaintiffs' federal claims, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims. 28 USC § 1367(c)(3); *United Mine Workers v. Gibbs* (1966) 383 US 715, 728. Accordingly, the Court dismisses the state law claims without prejudice. *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996). In so doing, the Court is cognizant that Plaintiffs have requested that the case be remanded to the state court. Opp'n at 25:12-18. As this case was originally filed in the district court, it cannot be remanded. *See Bok Sil Rah v. Aurora Loan Servs., LLC,* 2013 WL 140248, at *2 (C.D. Cal. Jan. 10, 2013). However, for statute of limitations purposes, any filing in state court should date back to the filing date of this case.

**IT IS SO ORDERED.**

Dated: July 19, 2013

_____
Maria-Elena James
United States Magistrate Judge